**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MOORING CAPITAL FUND, LLC, )<br>)<br>          Plaintiff, )<br>)<br>vs. )<br>)<br>PHOENIX CENTRAL, INC., ET AL., )<br>)<br>          Defendants. ) | NO. CIV-06-0006-HE |

**ORDER**

By separate order entered this date, the court has addressed plaintiff's motion for summary judgment. Pursuant to that order, the only claims or issues remaining for trial are a determination of the amount due plaintiff on the promissory note involved here and defendant's counterclaim for breach of contract. This order addresses the various motions in limine which have been filed by the parties. It also addresses plaintiff's motions directed to damages and/or proof of damages pursued as a sanction for discovery abuse.

The central issue involved in most of the remaining motions is the nature of, and proof of, defendant's damages as to its counterclaim. The defendant's most recent statement of its claimed losses is found in its second supplemental response to plaintiff's Interrogatory no. 14, dated July 18, 2007.[1] They include attorney's fees incurred as a result of Kurt Pfenning's

---

[1] *Phoenix initially also sought to recover for losses it allegedly sustained in conjunction with a development project involving a 40 acre tract of land in Oklahoma City owned by Ms. Knight. Ms. Knight testified during her deposition, and Phoenix subsequently confirmed, that it has withdrawn its claim for those damages. See Exhibits 10 to plaintiff's summary judgment brief, p. 225-27; Doc. # 165, Exhibit 5.*

1

and Stanley Ward's efforts to "obtain a correct payoff balance" from Mooring, defendant's Exhibit 18, plus attorney's fees incurred in connection with this litigation; appraisal, environmental and loan costs; lost lease revenue; additional interest and costs paid on the 2525 Manchester Property loan, additional interest and costs assessed on the Mooring loan subsequent to "Mooring's prevention of new loans;" additional interest owed or paid to bankruptcy unsecured creditors; additional interest, penalties and fees owed on real estate taxes; additional interest paid on credit cards; and interest on new loans "that would not have been needed." [Doc. #165], Exhibit 5. The damages sought approximate $500,000. The court deals first with the substantive objections to each category of claimed damages.[2]

Phoenix's first category of claimed damages, addressed in Mooring's motion in limine [Doc. #148] is for attorney's fees. It seeks $130,361.97, based on fees paid or owed to Stanley Ward ($720), Kurt Pfenning ($8200), the Mulinex firm ($51,243.27), and the Elias, Brooks firm ($70,198.70). Plaintiff objects to this category of damages on the basis that they are not damages attributable to defendant's substantive claims, but are properly a matter in the nature of costs to be determined by the court at the conclusion of the case. Phoenix argues all the fees are damages it incurred as a result of Moorings actions and should therefore be recoverable. The court concludes the fees attributable to Ward and Pfenning are properly treated as elements of damage. These prelitigation fees are potentially recoverable even though they are attorney's fees, as they were not incurred in connection with litigation,

---

[2]*The court has also relied on the descriptions of the evidence contained in the parties' summary judgment briefs.*

but rather are costs resulting from the defendant's alleged inability to obtain an accurate payoff balance from the plaintiff.[3] They are akin to the charges Phoenix might have incurred had it elected to hire an accountant to determine the amount due on the note and are, in the circumstances existing here, properly sought as damages. See generally, Phillips v. Snug Harbor Water and Gas Co., 596 P.2d 1273, 1276 (Okla.Civ.App. 1979) (recoverable damages for breach of contract included the hiring of "a lawyer to invoke the aid of the corporation commission." The fees charged by the Mulinex and Elias, Brooks firms, by contrast, are litigation costs in connection with this case and any recovery of those will be determined by the court at the conclusion of the case.

Defendant's second category of claimed damages is appraisal, environmental and loan costs. The court concludes these are proper elements of damage if they are attributable to the efforts to refinance the loan on the shopping center. If they relate instead to the Manchester property or to some other property claimed to have been collaterally impacted by the failed refinance efforts, they are not proper elements of damages in this case, as discussed more fully in connection with the Manchester property.

Defendant's third category of damages is "lost lease revenues," the amount of which Phoenix asserts to be $216,988. Assuming that the claimed lost revenues relate to revenues of the shopping center, there does not appear to be any substantive reason why evidence as to them would be inadmissible. To be sure, defendant's potential damages do not equate to

---

[3]*The discussions underlying the Ward fees suggest litigation was contemplated, but had not yet been commenced.*

"lost lease revenues." In a case of this sort, it appears that "lost profits" is an appropriate element of defendant's damages, if the evidence supports it. Phillips v. Snug Harbor Water and Gas Co., 596 P.2d 1273, 1276 (Okla. 1979) (Where contract breached, "Loss of profits is, of course, recognized compensable detriment, but loss of anticipated profits is extremely difficult to prove.") Lost profits and lost lease revenues, which is a description of gross income, are not the same thing. Lost lease revenues could be part of a lost profits calculation, which calculation would ordinarily involve consideration of other factors such as expenses incurred or saved by reason of the lost revenues, reduction of future net payments to present value and the like. In the present circumstances, it is impossible to know how the defendant contemplates using this evidence, but the court merely notes that, from a substantive (i.e. legally available and relevant to the issues in the case) standpoint, it appears to be admissible.

Defendant's fourth category of damages is for additional interest and costs incurred (totaling $31,113) as to a loan taken out on the property at 2525 Manchester, allegedly necessary due to the failed refinancing on the shopping center. As noted previously, the only surviving claim to which these damages would potentially apply is one for breach of contract. Oklahoma has generally followed the "time-honored general rules on recovery of damages for breach of contract" found in Hadley v. Baxendale, 9 Ex. 341, 156 Eng.Rep. 145 (1854), including that, in the absence of special circumstances that would distinguish the contract at issue from similar contracts, the damages recoverable are those that "would naturally and generally result from the breach according to the usual course of things."

4

Florafax Int'l, Inc. v. GTE Market Resources, Inc., 933 P.2d 282, 292 (Okla. 1997). "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." 23 Okla. Stat. 21. Applying these principles, Oklahoma permits recovery for damages flowing from a collateral contractual relationship only "if such damages can be said to have been within the contemplation of the parties at the time of contracting." Florafax, 933 P.2d at 293. Here, the court can discern no basis for concluding that, at the time the note was originally given (or even at the date of Mooring's acquisition of it) the parties contemplated costs associated with some future collateral undertaking of Phoenix. Accordingly, evidence as to this category of damages will not be permitted.

Defendant's fifth category of claimed damages is interest charged on the Mooring loan subsequent to the failed refinance efforts. As noted in the court's summary judgment order, the nature of Mooring's breach of contract, if ultimately established, is not such as would justify a forfeiture of the entire amount due. Similarly, that claimed breach does not justify a complete suspension of the running of interest. However, as the post-refinance interest running on the Mooring loan is an element in the calculation of damages (though not itself the measure of the damages) due to the alleged breach, this category of evidence will not be categorically excluded.[4] If an appropriate foundation for this evidence is laid at trial, it will be permitted.

---

[4]*The difference between the interest costs incurred by Phoenix on the Mooring loan and the interest it would have paid, attributable to the same amount financed, on the refinance loans, appears to be an appropriate element of damage here.*

Defendant's sixth category — additional interest paid or owed to Phoenix's bankruptcy creditors — runs afoul of the same principle as applied to costs on the Manchester property loan and will therefore be excluded.

Defendant's seventh category of damages is additional interest, penalties and fees in connection with real estate taxes. As the specific nature of this evidence is not apparent from the brief description of it in the schedules and the parties' briefs do not discuss it in detail, the court declines to address its admissibility via this limine ruling.

Defendant's eighth and ninth categories involves additional interest paid by Ms. Knight on her credit cards and interest paid on loans which defendant says would not otherwise have been needed. These categories, like the increased liability to bankruptcy creditors, are "too remote and speculative to permit recovery." Coker v. Southwestern Bell Telephone Co., 580 P.2d 151, 153 (Okla. 1978).

Resolution of the "substantive" concerns as to the categories of damages is relatively straightforward. The far harder question is to determine the appropriate resolution of the issues in light of the pattern of disclosure and discovery abuse, and the shell game as to use of expert witnesses, that defendant has employed in this case.

Defendant has repeatedly failed or refused to discharge its disclosure and discovery obligations under the rules. Rule 26 requires a party, without awaiting a discovery request, to provide other parties with:

> a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on

6

>   which such computation is based, including materials bearing on the nature
>   and extent of injuries suffered.

Fed.R.Civ.P. 26 (a)(1)(C). Rule 26(e) also imposes a duty on a party to supplement or correct disclosures made under subdivision (a) or in response to a discovery request if the party learns "that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other part[y] during the discovery process or in writing." Rule 26(e)(1).[5]

Mooring claims that Phoenix failed to provide any explanation or evidence supporting its damages claims until it delivered its trial exhibit notebook on Wednesday, July 11, 2007. Mooring asserts that the notebook contains versions of documents and spreadsheets prepared by Ms. Knight that were not produced during discovery. The plaintiff also contends that the business records or other materials on which those exhibits are based have never been produced and that the exhibits reflect expert opinion testimony, yet Phoenix has not designated an expert witness to testify at trial. A review of the litigation history substantially confirms the plaintiff's contention that, despite its obligations under Rule 26 and despite the plaintiff's specific request for information regarding the defendant's damages claims in its discovery requests, Phoenix has repeatedly failed to explain how the bulk of its damages are calculated or produce documents supporting them.

Mooring asked for information regarding Phoenix's damages in its interrogatories,

---

[5]*There are specific provisions in Rule 26 pertaining to disclosures with respect to expert witnesses. See Rule 26(a)(2); (e).*

specifically Interrogatory No. 14,[6] and in its document production requests. *See* plaintiff's motion to compel, [Doc. #61], Exhibits 1-2. Ignoring the fact that it already had a disclosure obligation based on Rule 26, Phoenix objected to Interrogatory No. 14 on the ground that the plaintiff had exceeded the number of permissible interrogatories. Counsel for the parties met and Phoenix's attorney agreed to provide the information requested in Interrogatory No. 14 and also documents supporting Phoenix's damages claims. *See* [Doc. #61], Exhibit 4. When the information and documents were not provided, Mooring filed a motion to compel. *See id.* Exhibits 5, 6 ("Also, what is the status of discovery responses and production on Phoenix's damages claims. It's been a month since our meet and confer and you've yet to provide damage calculations or supporting evidence."). Phoenix then supplemented its response to Interrogatory No. 14, stating "Phoenix further states that the requested damage calculation is the subject of analysis by an expert witness. Phoenix's expert identification and report will be submitted on or before January 1, 2007, in accordance with the Court's October 27, 2006 Amended Scheduling Order." [Doc. #153], Exhibit 3.

The court subsequently set a hearing on the motion to compel, but directed the parties, through counsel, to confer and attempt to resolve the dispute. Counsel then filed a report stating they had reached an agreement that would moot the motion to compel and, pursuant to which:

    1.    Phoenix will provide an itemization of its alleged damages including,

---

[6]*Other interrogatories also sought information or documents relating to damages Phoenix sought in connection with its counterclaims.*

> the type of damage, the basis for the damage claim and the value of the damage claim. (It is understood that Phoenix's damage claims are being reviewed by an expert and may be revised as permitted by the Federal Rules.)
>
> 2. Phoenix will identify and produce all exhibits relating to its damage claims.
>
> 3. Phoenix will identify all witnesses supporting its damage claims and provide a summary of expected testimony for each.
>
> 4. Items 1 through 4 above will be completed and provided to Plaintiff on or before, January 19, 2007.

[Doc. #71]. The court struck the motion to compel as moot and Phoenix supplemented its response to Interrogatory No. 14 on January 24, 2007, providing some information pertaining to the calculation of its damages, which was "[s]ubject to review by an expert witness to be formally disclosed on or before February 1, 2007." [Doc # 153], Exhibit 4. The documents that apparently were provided to support the defendant's alleged losses appear mainly to be spreadsheets created by Judith Knight. *See* [Doc. #165], Exhibit 2.

Mooring states that it was advised by Phoenix's counsel that its damage calculations required expert testimony, that Phoenix anticipated that Todd Lisle, a certified public accountant, would be its expert, and that his designation and report would be provided as required by the scheduling order. However, Judith Knight was the only witness Phoenix designated in its final list of expert witnesses filed on February 1, 2007. [Doc. #75].

New counsel then entered an appearance on behalf of the defendant after the court granted the defendant's former attorney's emergency motion to withdraw on February 14, 2007. The new counsel filed an application to designate Todd Lisle as an expert witness out

of time on April 22, 2007, stating in the application that "[t][hrough review and investigation of the instant matter, counsel for Phoenix has determined that the expert testimony of Lisle will be required on Phoenix's damage claim." [Doc. #104]. The court granted the defendant's motion and directed the defendant to file Mr. Lisle's expert report no later than May 14, 2007, and to produce Mr. Lisle for deposition, if requested by the plaintiff, before June 1, 2007, the discovery cut-off date. However, when an expert report was not filed, Mooring moved to exclude the expert testimony of Judith Knight on the basis she was not qualified to render an opinion on banking policy or to testify about Phoenix's damages claims. Phoenix then withdrew its designation of Judith Knight as a designated expert witness, stating that she would testify as a fact witness with respect to the circumstances pertaining to Mooring's negligence and misrepresentations, as to which she has personal knowledge. Phoenix also stated that she would testify "as a fact witness, but not a designated expert witness, as to damages sustained by Phoenix arising from Mooring's negligence." [Doc. #124], p.1.

Mooring contends Phoenix has failed "to provide any explanation or documentary evidence foundation, or support for *any* of the damage claims it is making in this case." Plaintiff's motion, [Doc. #153], p. 1. Phoenix responds that it has provided the plaintiff with documents and spreadsheets and asserts that most of its damage claims "are not the type for which 'documents' exist." Defendant's response, [Doc. #165], p. 3. That might be true with respect to some of the interest the defendant seeks to recoup. However, the defendant clearly had to rely on some documents to calculate the $216,988 in "lost lease revenue."

As recently as April 22, 2007, the defendant advised the court that its new counsel had "determined that the expert testimony of Lisle will be required on Phoenix's damage claim." Doc. #104. Phoenix now claims that Ms. Knight can testify as to its "lost lease income." However, she testified during her deposition on April 30, 2007, that she had not calculated the lost revenues and would need her expert to make the calculation. Plaintiff's Exhibit 10, pp.254-55.[7] Even if Ms. Knight were competent to testify as to lost lease income, the defendant never provided Mooring with documents – such as lease agreements or tax returns – substantiating such a sizeable loss.[8] The defendant repeatedly assured the plaintiff that it would provide the "basis for the damage claim" and would produce "all exhibits relating to its damage claims," [Doc. #71], yet none were forthcoming.

Phoenix failed to comply with its obligations under Rule 26 and the discovery rules. Despite assurances to opposing counsel and the court that it would provide the plaintiff with the documents underlying, and an expert's report explaining, the calculation of its lost revenue and other damages claims, little more than spreadsheets have been produced. The defendant has disregarded the discovery rules and has forced the plaintiff to prepare for trial without the information needed to defend against significant damages claims. The disregard

---

[7]*In its response to the motions in limine Phoenix distinguishes between the "future value of Phoenix's lost revenue," and "lost lease income." Doc. #165, p. 10. The defendant states that while Mr. Lisle was retained to testify as to the former, Ms. Knight is capable of testifying to the latter.*

[8]*The spreadsheets the court has reviewed do not even appear to address the lost revenue claim. See Doc. #165, Exhibit 2.*

of the rules, coupled with defendant's dodging and weaving as to use of, and the necessity for, expert testimony, would substantially prejudice plaintiff's ability to defend itself if forced to go forward in the present posture of the case.

"A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed." Rule 37(c)(1). Because the failure here is not harmless, the court concludes that as a sanction for its misconduct the defendant will not be allowed to introduce any evidence of damages based on claimed lost lease revenues or "lost profits" as such.[9]

The exclusion of lost profits evidence, which was to be offered by and through the testimony of Ms. Knight, is consistent with the conclusion that would likely have been reached as to her testimony even in the absence of disclosure/discovery abuse. Mooring argues that Ms. Knight, as a fact witness, could not testify to various things she apparently intends to testify to,[10] citing Fed.R.Evid. 701(c). Contrary to Mooring's suggestion, the court

---

[9]*While the plaintiff focused in its motion in limine on the defendant's failure to support its claim for lost lease revenue, the defendant also was less than forthcoming with evidence substantiating some of its other claimed losses. Therefore, the sanction is based on compliance in general.*

[10]*Plaintiff suggests Ms. Knight may also attempt to testify as to proper banking practices, proper accounting practices and the like, citing to references in defendant's trial brief. The court cannot determine from the present submissions what the scope of Ms. Knight's testimony may be. Depending on the nature of her testimony, there may be other areas (beyond lost revenues/profits) that Rule 701 would preclude her testifying to as a fact witness.*

does not view 701(c) as necessarily barring testimony by a fact witness (i.e. Ms. Knight) about lease revenues or lost profits. The Advisory Committee Notes to the 2000 amendments, which added the provisions of 701(c), specifically disclaimed any intention to overturn the result in those cases which allowed a business owner or officer, although not qualified as an expert, to testify in a proper case to the "value or projected profits of the business." However, the problem in this case is that, in her deposition, Ms. Knight specifically stated she could not explain the claimed lost revenues or lost profits without the assistance of some other expert. Having disclaimed that ability, it is extraordinarily difficult to justify Ms. Knight later testifying, whether as an expert or a fact witness, to those very facts or conclusions.

## SUMMARY

Based on the foregoing, plaintiff's motion to exclude the testimony of Judith Knight [Doc. #147] is **GRANTED** insofar as Ms. Knight seeks to testify as to lost least revenues or to lost profits based on lost lease revenues. Plaintiff's motion in limine as to evidence of attorney's fees [Doc. #148] is **DENIED** as to the fees of Mr. Ward and Mr. Pfenning, but otherwise **GRANTED**. Plaintiff's motions to exclude evidence of damages [Doc. #153] and to strike trial exhibits [Doc. #156] are **GRANTED** to the extent set forth in the above discussion.

**IT IS SO ORDERED**.

Dated this 7th day of August, 2007.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE